All right. And now the attorneys will argue the case. Please come forward and introduce yourself and tell us who's going to be doing the arguing. Good morning, Your Honor. We've set aside 15 minutes for each side. Of course, the affluent can save a couple minutes. I'll save a couple minutes. We have two cases today, so we're going to stick pretty much on schedule. And before we begin, I would just like to remind you, these microphones do not amplify. So the people in back of you can't hear a word unless you speak up. They record. They don't amplify. Okay. Brian O'Connor for the appellant, Your Honor, for the appellant, the State of Heber. And Peter Morse for Allstate, the appellant. Thank you. And I will be arguing first. Thank you. So may it please the Court. As Your Honors know, this declaratory judgment, summary judgment, was entered in the context of an underlying criminal case involving involuntary manslaughter. And I think, I didn't find any other cases, by the way, that in the involuntary manslaughter context as it relates to declaratory judgment. But if we look at all the cases carefully, the collateral estoppel in the context of this kind of a criminal case should not apply in an involuntary manslaughter. And the reason is reasonably expected to cause death or great bodily harm. So in the criminal context, they then look at whether or not there was a conscious disregard by the defendant, whether he was waving the gun around, et cetera, et cetera. As the court held, as the criminal judge in this case said, Salazar is involved in, I think his term was inexcusable recklessness. But my point is, is that the mindset, that mindset, inexcusable recklessness, is different than the mindset that we would need to look at in the context of a declaratory judgment case where it speaks to whether the defendant, in this case Salazar, reasonably or reasonably expected to kill Holly Heber. And so your issue of fact on summary judgment is Mr. Salazar's subjective state of mind. And he's going to testify, I never intended that the gun would go off. I never intended to kill Holly Heber. And in your view, that would take this out of the exclusion. It would be for the trier of fact to at least weigh that evidence, Your Honor, in the declaratory judgment case. The problem that we have as the plaintiff in the civil case, in all the cases that they rely on, either the defendant testified, like in Salazar where he admitted shooting somebody, or there was a plea, a plea deal where the plea encompassed the element of intent. But a plea deal case is completely different because people plead guilty for all sorts of reasons. True. And so courts generally say a guilty plea will not give rise to collateral estoppel. But a trial on the merits? But the trial on the merits in this case, Your Honor, involved where the defendant, which he certainly has the right to do so, takes the Fifth Amendment and does not testify. And the criminal judge in a bench trial, or the jury for that matter, has to look at all the facts, obviously, and there's a death involved. What bothers me and why I think this, why there should not be collateral estoppel in this context, if Holly Heber had been shot, Your Honor, and not killed, they could not have charged him with involuntary manslaughter. It would have been a reckless discharge of a firearm offense. And recklessness, just like recklessness here, is a different standard than reasonably expected to injure. Tell me how. Because reasonably expected, you're equating that with Mr. Salazar's subjective state of mind. I am. I'm not sure that the cases support the proposition that reasonably expected depends on this individual insured's state of mind. I think so. Otherwise, you'd never have summary judgment in these cases. Well, I respectfully disagree, Your Honor, because in the Savickas case and the other cases that they cite, the criminal defendant testified. And there was direct evidence of intent or some direct evidence of his state of mind. Well, I acknowledge that you can't just say, well, whatever he says goes. That's not the case. There has to be some objectivity about it. But when the defendant does not testify at all, or in your case, like you said, Judge, Your Honor, when there's a plea of guilty, the plaintiff, we in the civil case, are hamstrung. So you would advocate then a new rule that says if the underlying criminal in the underlying criminal case, the defendant invokes the Fifth Amendment and does not testify, that can never give rise to collateral estoppel on the issue of intent because the finder of fact didn't have any evidence. No, I don't think it has to go that far, Judge. I think each case has to be examined on its own facts. But right now, even the Salazar, even the Savickas case on which they rely on, when they talk about the elements of collateral estoppel, there's a fourth point, whether there was unfairness, an underlying unfairness. And I'm submitting to this Court that in an involuntary manslaughter charge, that particular case, when you compare if Holly had fortunately lived, and then she would be able, they would never be able, Allstate would never be able to get out of the case under those facts. But because of here, because she died, and in the criminal context. Explain that to me again. Because what you're saying is, if she had just been wounded, this wouldn't fall within the exclusion. And I'm not sure I follow you on that. Because she would be charged with reckless discharge of a firearm, Your Honor. And recklessness is not the same as whether one reasonably intends to cause, reasonably expects to cause injury. It might, but it's not the same. Tell me how. Well, because of the Metropolitan case and the other cases that we've cited that have addressed the issue of just recklessness. That is a different standard than reasonably expected to cause injury. It would still be a fact, there would still be a question of fact for the declaratory judgment judge, because there's no jury in a deck action, to resolve as to whether or not. Or the case, more likely, Your Honor, would go to trial in the underlying tort case, and the jury would decide whether there would be a special interrogatory as to whether he reasonably expected to cause injury. And if the jury said no, then all state would have to pay. But aren't we talking about, there's two different acts we're talking about. I mean, here, exclusions for bodily injury. There's the act of the shooting, and then there's the bodily injury. Yes. And those are separate. They are. And with regard to the bodily injury, to come within the, may reasonably be expected language. How would you, is there anything in the criminal code with regard to the definitions of recklessness, intent, and knowledge that you rely on? Well, I'm not a criminal lawyer, Your Honor, but I've read, you know, looking at the criminal case in this specific context, and I think the transcript was part of the record here. The mere discharge of a firearm, and if that kills or injures somebody. In that act, the discharge of a firearm is something that is reasonably expected in the context of a criminal case to cause injury. But in our civil case, we have to look at what Salazar, what was his intent when this thing went off? Did he reasonably expect that it was going to de-discharge and injure or kill, well, actually kill Holly Heibert because it was injured. So those are two different things. They are. This was an accident. It was. So the question of, you know, really in the criminal context, the question of intent is very different. It is. Than what we're talking about here. And that's my point. I think that's underlying my point. In the criminal context, the whole, in these, like in murder, it's different. Because in murder, there's going to be specific evidence of intent that ends the issue, like the Savickas case. Or in the Metropolitan case that we cited, that guy was charged with involuntary manslaughter, but he pled it down. And as Your Honor stated, in those plea cases, the courts are not going to give the insurance company an easy out in those circumstances. But in our situation, the criminal law is not going to let somebody walk if they're waving a firearm around and somebody gets killed. But that's not the same as what Salazar's intent was. If any, or what his mindset was. And I don't think that can be collaterally stopped to this family, because. Mr. I'm sorry. I'm sorry. Mr. O'Connor, when I look at this exclusion, frankly, I'm not sure that I think that Salazar's intent has any relevance. The exclusion says a bodily injury intended or which may reasonably be expected to result from a criminal act. There's clearly a criminal act. He was found guilty. Criminal act. And the criminal act, shooting a gun, could reasonably be expected to cause bodily injury or property damage. So I don't see where his criminal intent in the criminal case has anything to do with what's going on in this exclusion. Well, I think Metropolitan, without explicitly stating what you're getting at, Your Honor, tells us that it cannot be that simple. Because otherwise, if you looked at it in the drunk driving context, if somebody's intoxicated and they rear end me and I get hurt, there's no problem. All state has to pay. But if somebody's intoxicated and runs a red light and kills me, and my estate sues them, they can raise, well, it's a criminal offense now, because now it's reckless homicide, and there's no coverage. That cannot be our law. There's a element of public policy behind all insurance coverages. And yes, our insurer has to stand, I mean, the plaintiff, rather, has to stand in the shoes of the insurer, Salazar, to some extent. But the mere happenstance that this girl died, as opposed to getting shot, and now her family can't get any damages, I just can't follow that. And I think the Metropolitan case that we are pitting to, and that we cited, more or less tells us that. Well, it's not that her family can't get a damage award. They can get a damage award against Mr. Salazar. The question is, is this within the risk that all state agreed to assume when it wrote the homeowner's policy? And I totally agree, Your Honor. And the answer to that is glaringly yes. And that's the main point I'm trying to bring. If she was shot and injured, that is clearly a risk that they would be on the hook for. But because she died and this guy, the shooter, now gets convicted of involuntary manslaughter, they're off the hook. That just cannot be our law. I don't think that is the law. And I think that's why collateral estoppel has to, in the involuntary manslaughter context, and I don't think there's been a case that's addressed this. If there was, I didn't see it. Has to, you focus on that term identical. Are the issues in the DEC action identical to the criminal case? And I'm submitting to this court that they're not. Thank you. Good morning, Your Honor, Your Honors. Just maybe jumping right to what this discussion has been this morning. The criminal act, the criminal charge he was convicted of, was both involuntary manslaughter and aggravated unlawful use of a weapon. We cited the rule, the standards, the criminal standards for involuntary manslaughter, and that was when a person unintentionally kills, but his acts were such as to likely cause death or great bodily harm. That's what the criminal judge convicted him of. That's certainly as much, or I think much more, than all his exclusion, which as you note is a subjective, reasonable belief. So as a matter of law, somebody who's handling a gun should expect it to go off. Is that right? In this- As a matter of law. Under the facts of this case, and as we cited a lot of the facts of the case, the criminal case went through a lot of the details. Well, but he expected it to go off. He knows it's loaded, he's cocking it, uncocking it. But it's an accident, right? It's an accident. He certainly did not mean to shoot at the plaintiff, that's for sure. He might have expected it to go off, but not expected to hit anybody, or hit her. But he's in a crowded room with lots of people who are drinking, and he's cocking and uncocking a gun, putting the magazine in, taking it off. People are telling him, put that gun away. He still goes on. But he didn't intend to. To shoot anyone or kill the plaintiff, obviously. Right, okay. So, where in the complaint are there facts that allege an intent a reasonably, reasonably be expected to result from the intentionally, what are the complaints? The TOR complaint, Your Honor? Yeah, the TOR complaint. Yeah, the TOR complaint has a negligence count. They're obviously trying to avoid the exclusion. But as you know from these cases, the insurance company can come in and show once the insurer's been convicted after a criminal trial, they can show that that is now collateral stoppable as to both the fact that it was a crime, that's been determined, and the fact that injuries are reasonably expected to result. That's what the court said. We're in the statute under intent. It doesn't come under the intent in the Criminal Act. And with regard to knowledge, it says the result of his or her conduct described by the statute defining the offense, when he or she is consciously aware that the result is practically certain to be caused by his conduct. Which statute is that, Your Honor? That's under knowledge 5 slash 4 dash 5. The criminal statute. Criminal statute. So, again, that seems to me there's some subjectiveness there that has to be determined. And that was apparently determined enough in the criminal case for him to be criminally convicted. In our civil coverage case, we don't need to prove any subjective intent or expectation. It's reasonable expectation. My whole idea of this insurance policy was to cover accidents. Now, if he was handling the gun just the way he was handling it, and he meant to shoot it, obviously that's excluded. That's intentional. Right. So now the question is, how close, if you take one end of a spectrum is intentional and one is reckless, and you take the concept of reasonably be expected, where in that continuum does it fall? You're saying it falls very close to intent. If it's criminal recklessness, that's reasonable expectation in my view. Criminal recklessness, that you can go to jail for, like the cabbie did. But the criminal recklessness had to do with the shooting, not with the, and we talked, it's different between the act of shooting and the injury. The injury was an accident. He didn't mean to shoot. Correct, he did not mean to shoot. He didn't mean to shoot. So how can you say that it would be reasonably expected? I mean, as a matter of law, we're talking as a matter of law, that it would be expected. So that's why I asked if- When you do the acts that he was convicted of, some injury is reasonably expected as a matter of law. Not at all. He could have missed her. It doesn't say it's guaranteed, but it's reasonably likely to occur. And the criminal statute says likely to cause. But people could have, he could have, I mean, he had to have some, it seems to me that, you know, on that continuum, I'm not clear as to why that reasonably expect is so close to intent. That isn't something more akin to being reckless. I think it is. If you're acting in a criminally reckless manner, the criminal law says that injury is likely to result. That's why it's a crime to do what he did. To be at a party playing with a gun. But just because it's a crime, that's not the end all and be all, right? Well, it's half of it. It shows that it's a criminal act. And now the only question is, was any bodily injury reasonably expected to result from that criminal act? And the law says that it was. The criminal law says it was, and the coverage law says it was. Savickas says it was three times. And then we also have the American Country versus Williams, which is now we're way down from murder. Now we're just down to a battery situation with a cabbie and a car and a police officer. And he was only convicted of misdemeanor battery. And the court said, and he got community service in that case where Mr. Salazar is still in jail. That also collaterally stops the insured and the claimant from contesting the fact that it's a criminal act and that some injury is reasonably expected. But you can be guilty of, there's a difference between involuntary manslaughter and voluntary manslaughter. You agree to that? Yes. And so involuntary is not, it's a lot different than voluntary. It means you didn't have any ill motive towards the person you ended up shooting. And that, to me, doesn't that go right to the question of being reasonably expected? Because that's the intent. You could have all your best friends in the room, like maybe he did, and you're playing around with his gun. You're loading it, unloading it, making sure it's loaded, passing it around, being told to put away. It raises, criminally, to a level of expectation of injury. And it's a crime to do that. So as a matter of law, handling a gun, that was my first question. These facts, Judge, yes. Not just any handling. If you're a safe hunter and you're in your kitchen cleaning it, you don't reasonably expect to injure someone. But if you're doing what this guy did. But he didn't, but you acknowledge that he didn't want to kill her. He didn't want to shoot her. It was an exit. Didn't want to. But how then do you get to this, making it close to intent? Isn't it more likely that this is, he was taking the risk? It isn't that he, you're not saying that he had to want to shoot her or kill her. You're saying that he had to take the risk that in this crowded garage, under these circumstances, he was willing to take the risk that someone, anyone, could get shot. Exactly. So we ask that this court affirm the summary judgment that was entered by the trial judge. Thank you. Any further questions? Thank you. Counsel. Just briefly, Ron, the only other point or two that I wanted to reiterate is that all the cases following Savickas or all the cases cited by Allstate either involve direct evidence of intent in the terms of admissions by the criminal defendant, or a finding of intent in terms of battery like the Williams case. Well, but, you know, the caveat in Williams would say, I wasn't trying to hurt the officer. I just wanted to get away from him. He was leaning in my car. I didn't want a ticket. I wanted to get away from him. I didn't intend to hurt him. But that's clearly different in our case, Judge, because the cabbie intended to do something to the cop. He intended to move him off the- Mr. Salazar intended to have a loaded weapon in a room full of young people who had been drinking and some of whom had been abusing prescription drugs. He meant to have that weapon there. But he did not intend, or at least there's no evidence, Judge, that he intended to discharge. Right. And he gets back to the- And neither did, cabbie didn't intend to hurt the police. No, the cabbie did intend to step on the accelerator. And Mr. Salazar intended to cock that gun and have it in the room with people who had been drinking. But that's the action, not the injury. That is the action. I think that conflates the two. We're talking about injury here, not the action. The action was the gun and having the gun and what he was doing with the gun. And that's why the criminal context, he can be found guilty like that. But my point, and I agree with your honor, is that when we're talking about the injury in the civil context, in the declaratory judgment, we have to look at whether Salazar reasonably expected to injure or kill Holly Heber. And he didn't. There's no evidence of that. And that goes back to his subjective. It all turns on his subjective intent. As long as he didn't testify in the criminal case. And as long as he is willing to take the stand and say, I never meant to shoot off the gun, he wins, right? Well, we might win, Judge. But yes, that's my point, though, that that should be for the fact finder in the declaratory judgment case. We should not be deprived, my clients should not be deprived of the right to get damages in this case. Although, obviously, we still can sue him. But the practical effect, when an insurance policy is there to cover people to get hurt by accidents. And that's what this is. And that gets back to the thing I keep repeating myself. But if Holly survived, we wouldn't even be here. There wouldn't be, the declaratory judgment wouldn't hold water. And that just doesn't make sense. I think that's why I'm asking the panel, look at this involuntary manslaughter statute. The context here, to me, is different when you look at the issues in the civil case. How can great bodily harm be likely to occur from conduct? And the same conduct not reasonably be expected to result in bodily injury? How can those two be the same? In the criminal context, that's what I said at the outset, Your Honor, I stated that the mere discharge of a firearm, when that happens in the criminal context, if somebody gets killed, that's by definition, that was reasonably expected to occur. Then you have to look at the second thing, did the defendant consciously disregard the risk? But a conscious disregard of the risk is different, as Justice Hyman pointed out, from reasonably expecting that an injury will occur. But the policy talks about the bodily injury being reasonably expected to occur. Okay, it does. But I don't think, again, and I just fall back on what I pointed out before, so then that would mean that then Allstate or any insurance company is going to always get out of every case when somebody dies. Because if you drive intoxicated and kill somebody, and you're convicted of reckless homicide, that ends the issue according to them or according to that interpretation  All right, so then the exclusion itself says reasonably expected to result from, one, the intentional or criminal acts or omissions. So what you're doing is saying intentional criminal acts. You're forgetting that or, and I don't see how you get away with that. Well, I still think, and I fall back on Pittington, Your Honor, where they talk about that, because in the involuntary manslaughter context, it's still recklessness, or in our case, gross recklessness. But in the reasonably expected language, in the insurance context, there must be some evidence of intent or state of mind of the defendant in that case. You don't think that waving a loaded cocked gun with a full magazine around in a small garage crowded with people is assuming a risk? It might, it is, Judge, but I don't think that ends, what we got shut out of a civil case, we were collaterally stopped from presenting all the evidence in that case. And I don't know what Savickas might say in the civil case. And that's, again, my point. You have criminal rights, and because he's asserting those criminal rights, that prevents the estate of Heber from fully getting all the facts before whoever the declaratory judgment judge or whoever the fact finder is in the civil case. And I don't think, in that context, collateral estoppel can be applied. And it seems curious to me that the cases that have upheld collateral estoppel all have some specific evidence of the criminal defendant's intent or state of mind, and we don't here. And I don't think collateral estoppel should apply under those circumstances. All right. Thank you. Thank you. We're going to stand in recess for a few minutes. This is a split panel. There's a case after us.